UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARY D. ABELLA,<br><br>Plaintiff,<br><br>v.<br><br>SEVEN SEVEN CORPORATE GROUP, *et al.*<br><br>Defendants. | Civ. No. 2:13-05263 (WJM)<br><br>OPINION |

The Complaint in this retaliation case, filed on September 3, 2013, alleges that Plaintiff Gary Abella, a non-citizen, was terminated after he refused to waive his right to a "prevailing wage" under 8 U.S.C. § 1182(n)(1)(A). On October 18, 2013, the Court *sua sponte* ordered Abella to show cause why the case should not be dismissed for lack of subject matter jurisdiction. On December 18, 2013, Abella filed an Amended Complaint. Now before the Court are: (1) Abella's response to the order to show cause; (2) Abella's motion to amend the original Complaint pursuant to Federal Rule of Civil Procedure 15; (3) Defendant Adela Sering's motions to dismiss the original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7); and (4) Defendants Adela Sering, Seven Seven Software, Inc. and Elmer Maximo's motions to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court will **GRANT** the Rule 12(b)(7) motions to dismiss the Amended Complaint. The Court will **DENY** the additional motions on mootness grounds.

I. BACKGROUND

Plaintiff Gary Abella is a native of the Phillipines. Am. Compl. ¶ 17, ECF No. 22. On July 12, 2004, Abella was hired by CyberJ Resources/Seven Seven Corporate Group and Seven Seven Global Services, Inc. ("Global"), a Phillipine corporation. *Id.* ¶¶ 12, 19. Abella claims that Seven Seven Corporate Group ("Corporate") "exercises dominion and control" over Global and Seven Seven Software, Inc. ("Software"). *Id.* ¶ 13. Notably, Abella describes Corporate as an unincorporated entity, but he fails to describe the nature of Corporate's legal status. *Id.* ¶ 10. Software, however, represents that Corporate is not an independent legal entity. ECF No. 12-1 at 3.

In November 22, 2006, Elmer Maximo, Vice President and Senior Managing Director for Global Human Resources at "Seven Seven Corporate Group/Seven Seven

1

Software," *id.* ¶ 15, sent Abella an offer letter from the offices of "Seven Seven Corporate/Seven Seven Global." *Id.* ¶ 22. The offer was for a position in the United States. *Id.* The offer resulted in a memorandum of understanding (the "MOU") signed by Abella and Global. *Id.* The MOU provided that Global would process an L1 visa for Abella, and that after six months, Global would sponsor an application for Abella's green card. MOU, ECF No. 12-4. Abella and Global both signed the MOU on December 2, 2006. Am. Compl. ¶ 22.

On June 14, 2007, "[a]ll rights and obligations of the parties pursuant to the [MOU] were transferred, assigned, or otherwise conveyed by [Global] by operation or effect" to Software. *Id.* ¶ 23. On June 15, 2007, Abella arrived in New Jersey to begin work at Bear Stearns. *Id.* ¶ 24. In 2008, roughly one year after he came to work in New Jersey, Abella began to discuss his green card application with Maximo. *Id.* ¶ 29. Abella prepared paperwork for the application, but an attorney for Corporate/Global told Abella that certain documents were missing. *Id.* ¶ 30. Maximo said he would provide the documents, but he never did. *Id.* On July 21, 2009, Abella contacted Maximo, Corporate, Global, and Software, requesting that his green card be processed in accordance with the MOU. *Id.* ¶ 31. Abella was told that he could either (a) resign, or (b) switch his visa classification from L-1A to H-1B and restart his green card application using the PERM Labor Certification process. *Id.* ¶ 32. Abella chose the latter. *Id.* ¶ 33.

In June 2010, Abella learned that he was being paid less than the "prevailing wage" for someone in his position. *Id.* ¶ 34. Title 8, Section 1182(n)(1)(A) provides that non-citizens cannot be provided H-1B status unless their employer certifies to the Secretary of Labor that the employer will provide wages "that are at least the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question, or the prevailing wage level for the occupational classification in the area of employment, whichever is greater . . . ."

Maximo asked that Abella waive Abella's right to be paid the "prevailing wage," but Abella refused. *Id.* ¶¶ 34-35. Maximo told Abella that "the company" would continue with the green card process, but after Abella again refused to waive his right to be paid the prevailing wage, required immigration papers were not filed on Abella's behalf. *Id.* ¶¶ 36-37. On September 12, 2012, Maximo told Abella that Software could not provide the backpay that would bring Abella's compensation in line with the prevailing wage. *Id.* ¶ 47. On September 20, 2012, Maximo told Abella that Abella would be terminated, and that Software would not extend Abella's H-1B visa. *Id.* ¶ 48. Abella was forced to return to the Phillipines. *Id.* ¶ 50.

## II. PROCEDURAL HISTORY

On September 3, 2013, Abella filed a six-count Complaint against Corporate, Software, Global, Maximo, and Adela Sering, Corporate's owner and a principal of Software, *id.* ¶ 14, as well as John Does and ABC Companies. Count I alleges retaliation under the New Jersey Conscientious Employee Protection Act ("CEPA"). In Count I, Abella claims that he was retaliated against because he refused to waive his right to be

paid the prevailing wage.  Count II alleges breach of contract.  Count III alleges fraud. Count IV alleges negligent misrepresentations.  Count V alleges civil conspiracy.  Count VI alleges punitive damages.  Notably, none of these causes of action are federal causes of action.

After the Complaint was filed, but before any motions were filed, the Court, *sua sponte*, ordered Abella to show cause why the Complaint should not be dismissed for lack of subject matter jurisdiction.  Order to Show Cause, ECF No. 8.  In that order, the Court noted an apparent lack of jurisdiction under both 28 U.S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 1331 (federal question jurisdiction).

With respect to diversity jurisdiction, the Court explained that there can be no diversity jurisdiction when a plaintiff and a defendant are both aliens.  *Id.* at 2 (citing *Israel Aircraft Industries Ltd. v. Sanwa Business Credit Corp.*, 16 F.3d 198, 202 (7th Cir. 1994)).  According to the Complaint, one of the Defendants, Global, is an alien corporation. The Complaint describes Abella as a "native" of the Phillipines.  Because "native" appeared to mean citizen, the Court concluded that diversity jurisdiction was probably lacking.

With respect to federal question jurisdiction, the Court noted that federal question jurisdiction is usually absent when a Plaintiff's causes of action do not come from federal law.  However, the Court noted that in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, "the Supreme Court recognized a narrow exception to this general rule in cases where a state law cause of action 'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Id.* (quoting *Grable*, 545 U.S. 308, 314 (2005)).  The Court proceeded to explain:

> Of the various state law causes of action asserted in the Complaint, it appears that only the CEPA cause of action could potentially implicate federal law. Under CEPA, an employer is barred from retaliating against an employee who refuses to take actions that the employee "reasonably believes" will violate the law. N.J.S.A. 34:19-3(c)(1).  Here, Abella alleges that he was fired because he refused to waive his federal right under 8 U.S.C. § 1182(n)(1)(A) to receive compensation equal to that of a non-immigrant employee.  Even if Abella's CEPA claim necessarily raises a federal issue, it does not appear that the federal issue is substantial. Grable provides federal jurisdiction where disputes center around the meaning—as opposed to the application—of federal law.  *See Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008) (no federal jurisdiction under Grable where disputed federal issue was "predominantly one of fact").  The Court doubts that the parties will disagree over the meaning of 8 U.S.C. § 1182(n)(1)(A). Instead, the parties will likely disagree about whether Defendants violated 8 U.S.C. § 1182(n)(1)(A).

*Id.* at 2-3.

On October 25, 2013, Abella responded to the order to show cause by voluntarily dismissing his claims against Global and the John Does and ABC Companies. ECF No. 9. Abella contended that because Global was no longer a party, the Court had diversity jurisdiction over the case. Based on that diversity jurisdiction, and based on Abella's argument that the Court has federal question jurisdiction under *Grable*, Abella moved under Rule 15(a) to file an amended complaint, which the Court will refer to as the "Proposed Amended Complaint." ECF No. 10. The Proposed Amended Complaint contains the same six counts as the original complaint, as well as a seventh claim for breach of the implied covenant of good faith and fair dealing.

On October 31, 2013, Maximo and Software responded to Abella's submissions by moving to dismiss the Complaint pursuant to Rule 12(b)(6). ECF No. 12. Subsequently, Maximo and Software filed an opposition brief to Abella's motion to amend. In that brief, which the Court construes as a motion to dismiss pursuant to Rule 12(b)(7), Maximo and Software conceded that Global's dismissal gave the Court diversity jurisdiction, but they maintained that Global's dismissal removed a necessary party from the case, in violation of Rule 19. ECF No. 14. Maximo and Software further argued that Abella's motion to amend should be denied on mootness grounds.

On November 27, 2013, Sering followed suit, filing her own motion to dismiss the Complaint under Rule 12(b)(6) and Rule 12(b)(7). ECF No. 16. Twenty-one days later, on December 18, 2013, Abella filed a document labeled "Amendment to Complaint as to Defendant Adela Sering, also known as Adela Sering-Fojas." ECF No. 22. This document, which the Court refers to as the "Amended Complaint," contains the same seven counts as the Proposed Amended Complaint, in addition to a new count for "wrongful termination in violation of public policy." Like the Proposed Amended Complaint, the Amended Complaint does not name Global as a defendant. On December 31, 2013, Sering moved to dismiss the Amended Complaint pursuant to Rules 12(b)(6) and 12(b)(7). ECF No. 24.

## III. DISCUSSION

Now that Abella has voluntarily dismissed his claims against Global—and now that none of the defendants are non-citizens—there is no dispute about the Court's diversity jurisdiction. However, jurisdiction notwithstanding, Maximo, Sering, and Software, who the Court refers to as "Defendants," maintain that the case must be dismissed under Rule 12(b)(7) based on a failure to join Global. The Court agrees.

The Court begins with a procedural issue. After Sering moved to dismiss the Complaint, Abella responded by timely filing the Amended Complaint, which purports to add new allegations against Sering only. Sering has now moved to dismiss this Amended Complaint. Because the operative complaint is now the Amended Complaint, the Court will **DENY** on mootness grounds Sering's motions to dismiss the original Complaint. In what follows, the Court will address Sering's motions to dismiss the Amended Complaint only. Furthermore, because Maximo and Software take the position that their arguments for dismissal of the original Complaint also apply to the Amended Complaint, ECF No.

4

24-2 n.1, the Court will treat Maximo and Software's motions to dismiss the Complaint as if they were directed at the Amended Complaint. This practice conforms with the practice of other courts in the Third Circuit. *See, e.g.*, *Weight Loss Servs., LP v. Herbal Magic, Inc.*, No. 11-3859, 2011 WL 4402103, at *3 (E.D. Pa. Sept. 22, 2011) (granting motion to amend and treating pending motion to dismiss as if it were directed at the amended complaint).

In determining whether to grant a Rule 12(b)(7) dismissal, "[a] court must first determine whether a party should be joined if 'feasible' under Rule 19(a)." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993). "If the party should be joined but joinder is not feasible because it would destroy diversity, the court must then determine whether the absent party is 'indispensable' under Rule 19(b)." *Id.*

As an initial matter, if joinder is feasible, then Global must be joined under Rule 19(a). Rule 19(a)(1) provides that "[a] person . . . must be joined as a party if in that person's absence, the court cannot accord complete relief among existing parties." Rule 19(a)(1)(B) also provides that a person must be joined if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest." Count II of the Amended Complaint alleges breach of contract. The contract at issue was signed by Global. Because it is a contracting party, Global is necessary under Rule 19(a). *See Corsi v. Eagle Publishing, Inc.*, No. 7-2004, 2008 WL 239581, at **3-4 (D.D.C. Jan. 30, 2008) (collecting cases); *see also Travelers Indem. Co. v. Household Int'l Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991) ("[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party."). Moreover, Counts III and IV of the Amended Complaint allege fraud and negligent misrepresentation based on representations contained in the MOU. It is difficult to see how Abella could pursue these claims without Global in the case. The same goes for the breach of the covenant of good faith and fair dealing claim Abella includes in the Amended Complaint.

Abella disagrees, arguing that Global does not need to be a party in this case because Global is the alter ego of Corporate and/or Software and because Corporate and Software are both parties in this case. Abella's argument fails. Because Abella is alleging wrongdoing on the part of Global, Global must, if feasible, be given a seat at the table to defend itself both from the alter ego allegations and the substantive counts in the Complaint. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (collecting cases); *cf. Stewart Tenants Corp. v. Square Indus., Inc.*, 703 N.Y.S.2d 453, 455 (App. Div. 2000) (under New York law, "an action to pierce the corporate veil requires that purported dummy corporations be parties, even if the parent corporation is alleged to be the one which unjustly retains the funds").

Additionally, in a related vein, Abella contends that Global does not need to be a party because its interests will be protected by Software. Here, Abella maintains that Global's interest in Abella's employment relationship have been assigned to Software. But this argument is not based on the text of the MOU, which makes absolutely no

5

mention of Software.  Perhaps Abella's assignment argument will ultimately succeed; perhaps not.  Regardless, Abella it is an argument that implicates fact development.  The Court finds that Global needs to participate in that fact development to properly defend itself.

Having concluded that Global must be joined if feasible, the Court next asks whether it is feasible to join Global in this action.  The answer to that question is no: Global cannot be joined because joinder would divest the Court of diversity jurisdiction.  Global is a Phillipine corporation.  Therefore, it is an alien for purposes of diversity jurisdiction.  Abella, who admits to being a Phillipine native, does not deny that he is a Phillipine citizen.  Accordingly, if Global is a party, then Plaintiff and a Defendant are both aliens. That means there is no diversity jurisdiction. *Israel Aircraft*, 16 F.3d at 202.

Abella contends that joining Global would not destroy subject matter jurisdiction because the Court has an independent basis for jurisdiction: federal question jurisdiction. Abella is incorrect.  In its order to show cause, the Court noted that because none of Abella's causes of action sounded in federal law, federal question jurisdiction would only exist if Abella could demonstrate that his allegations "necessarily raise[d] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  Order to Show Cause at 2 (quoting *Grable*, 545 U.S. at 314).  The Court went on to note that "*Grable* provides federal jurisdiction where disputes center around the meaning—as opposed to the application—of federal law." *Id.* at 3.

Abella argues that his CEPA claim satisfies *Grable* because its resolution hinges on a determination of whether Defendants' conduct violates 8 U.S.C. § 1182(n)(1)(A). That is a question of application, not meaning.  Abella also contends that the resolution of his CEPA claim will require a court to construe the meaning of 8 U.S.C. § 1182(n)(1)(A). The Court is skeptical about whether the parties will genuinely dispute the meaning of 8 U.S.C. § 1182(n)(1)(A).  *Cf. Patel v. Boghra*, 369 Fed. Appx. 722 (7th Cir. 2010) (agreement to violate prevailing wage protection in 8 U.S.C. § 1182(n) would "cost [an employee] his visa and his job").  But even if the parties do genuinely dispute the meaning of federal law, Abella's CEPA claim would still not confer federal question jurisdiction.  That is because CEPA imposes liability when an employee is retaliated against because the employee refuses to do something that he "reasonably believe[s]" will violate the law.  N.J.S.A. 34:19-3.  Because a court deciding Abella's CEPA claim would only have to address Abella's reasonable belief about the meaning of federal law—rather than the meaning of federal law—the federal issue is not a substantial issue in the case. *See Gibson v. Cellular Sales of Knoxville, Inc.*, 2013 WL 3754021, at \*\*4-5 (E.D. Tenn. July 15, 2013) (no *Grable* jurisdiction based on state law whistleblower claim where claim hinged on plaintiff's "reasonable belief" about meaning of federal law).

Lastly, since joining Global would destroy subject matter jurisdiction, the Court must consider whether the case should proceed in Global's absence.  This consideration implicates four factors:

6

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

After considering these factors, the Court concludes that the case cannot proceed in Global's absence. First, Global will be prejudiced if the Court determines, in its absence, that it is the alter ego of another company. Second, it is unclear how this prejudice could be lessened through provisions in the judgment or other relief. Third, if the Court determines that there is no alter ego relationship, the judgment rendered in this case would be inadequate because Abella would have to bring a separate suit to recover against Global.

Finally, if this case is dismissed, Abella has an adequate remedy: he can bring some, and possibly all of his claims in state court. Here, the Court uses "some" rather than "all" because Abella argues that his CEPA claim could be untimely if it is filed in state court. Abella argues that that the limitations period on his CEPA claim expired on September 30, 2013, 27 days after the instant suit was filed. Abella further argues that if he now files his CEPA claim in state court, the limitations period will have expired unless it was tolled during the pendency of this suit. Abella maintains that a New Jersey state court will toll the limitations period if Abella can demonstrate "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not a strict compliance with the statute." Response to Order to Show Cause at 5 (citing *Negron v. Llarena*, 156 N.J. 296, 305 (1998)), ECF No. 10. While the tolling decision is reserved to the New Jersey state court, this Court notes the following: It does not appear that Defendants will suffer any prejudice if the case proceeds in state court immediately following a dismissal in federal court. Also, Abella attempted to comply with the statute of limitations by timely filing his case. Furthermore, Abella's exercised diligence in timely filing this suit, and that diligence demonstrates a general compliance with the purposes of the statute. *See Llarena*, 156 N.J. at 305. Additionally, Defendants had reasonable notice of Abella's claim based on Abella's timely filing. Lastly, it is clear that Abella only filed in federal court because he mistakenly believed that federal court had subject matter jurisdiction over this case. This mistaken belief might have been reasonable given that federal question jurisdiction under *Grable* is a "difficult area of law." *In re Avandia Marketing,*

7

*Sales Practices, and Prods. Liab. Lit.*, 624 F. Supp. 2d 396, 414 (E.D. Pa. 2009). Ultimately, the Court finds that the Rule 19(b) factors way in favor of dismissal. Accordingly, the Court will **GRANT** Defendants' Rule 12(b)(7) motions to dismiss the Amended Complaint.

Before concluding, the Court notes that Corporate has not moved to dismiss because Software takes the position that Corporate lacks independent legal significance. Abella maintains that Corporate has an independent legal significance. The Court need not resolve this issue. That is because "[t]he issue of mandatory joinder under Rule 19 is one that may be raised sua sponte." *Hayden v. Freightcar America, Inc.*, No. 7-201, 2008 WL 375762, at *18 (W.D. Pa. Jan. 11, 2008) (citing *MasterCard Inter. Inc. v. Visa Intern. Service Ass'n, Inc.*, 471 F.3d 377, 382-83 (2d Cir. 2006)). Here, even if the Court were to accept Abella's contention that Corporate has independent legal significance, it would dismiss the case against Corporate for the same reason the Court is dismissing the case against Software, Maximo, and Sering: failure to join a necessary party.

Finally, since the Court is dismissing this case for failure to join a necessary party, the Court will **DENY** as moot Abella's Rule 15(a) motion to amend, Software and Maximo's Rule 12(b)(6) motion to dismiss, and Sering's motion to dismiss the Amended Complaint under Rule 12(b)(6).

## IV. CONCLUSION

For the reasons stated above, Maximo, Software, and Sering's Rule 12(b)(7) motions to dismiss the Amended Complaint are **GRANTED**. The Amended Complaint is **DISMISSED** against Maximo, Software, and Sering. Based on a failure to satisfy Rule 19, the Amended Complaint is also **DISMISSED** against Corporate.

Finally, Abella's Rule 15 motion, Software and Maximo's Rule 12(b)(6) motions, Sering's Rule 12(b)(6) motions, and Sering's Rule 12(b)(7) motion to dismiss the Complaint are **DENIED** as moot. An appropriate order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 21, 2013**